UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARIO A. VALDEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| VS. | ) Civil Action No. SA-13-CA-140-XR |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER OF THE SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

On this date, the Court considered the Memorandum and Recommendation of the Magistrate Judge, issued September 18, 2013, and Plaintiff's objections thereto. The Magistrate Judge recommends affirming the decision of the Social Security Administration that Plaintiff is no longer disabled and is not entitled to receive disability and supplemental security income ("SSI") benefits.

### I. Background

In 1995, when Plaintiff Mario Valdez was a minor, he was found disabled as of March 18, 1982 (his birth date) due to mental retardation and awarded SSI benefits. The Commissioner conducted a continuing disability review ("CDR") in September 2000, and found that Valdez again met the requirements of Listing 12.05 (mental retardation). On June 30, 2009, the Commissioner again conducted a CDR and concluded that Plaintiff was no longer disabled as of June 1, 2009. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). In 2011, Plaintiff filed a Title II disability claim, which was consolidated with the CDR. ALJ Morrison conducted a hearing on December 9, 2011, and issued his decision on February 23, 2012. Tr. 16. ALJ Morrison concluded that Plaintiff's disability ended on June 30, 2009. The Appeals Council denied Plaintiff's request for review on December 26, 2012. Tr. 4. Plaintiff filed this lawsuit on February 26, 2013.

Plaintiff argues that the ALJ improperly applied the law to re-adjudicate the initial

determination of mental retardation and wrongly terminated his benefits. Specifically, Plaintiff contends that the ALJ legally erred when he redetermined whether Valdez had subaverage intellectual functioning and deficits in adaptive functioning, and that his finding of medical improvement was not supported by substantial evidence.

## II. Applicable Law

Title 42 U.S.C. § 1382c(a)(4) establishes standards for the termination of SSI benefits. It provides, "A recipient of benefits based on disability under this subchapter [Subchapter XVI] may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by--(A) in the case of an individual who is age 18 or older--(i) substantial evidence which demonstrates that--(I) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (II) the individual is now able to engage in substantial gainful activity; or . . . (C) in the case of any individual, substantial evidence (which may be evidence on the record at the time any prior determination of the entitlement to benefits based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that a prior determination was in error." Further, "[a]ny determination under this paragraph shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this paragraph shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.*

The ALJ must follow specific steps in reviewing the question of whether the claimant's disability continues. 20 C.F.R. § 416.994. The steps are as follows:

> Step 1. Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter? If so, the disability will be found to continue.

Step 2. If not, has there been medical improvement? Medical improvement is any decrease in the medical severity of the impairment(s) that was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with the impairment. If there has been medical improvement as shown by a decrease in medical severity, see step 3. If there has been no decrease in medical severity, there has been no medical improvement.

Step 3. If there has been medical improvement, determine whether it is related to the claimant's ability to do work; *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If the most recent favorable decision was based on the fact that the claimant's impairment met or equaled a Listing and medical improvement has occurred and the severity of the prior impairment no longer meets or equals the same Listing, the ALJ "will find that the medical improvement was related to [the claimant's] ability to work." If medical improvement is not related to claimant's ability to do work, see step 4. If medical improvement is related to claimant's ability to do work, see step 5.

Step 4. If there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, consider whether any regulatory exceptions apply. If none apply, the disability will be found to continue. If one of the first group of exceptions[1] to medical improvement applies, see step 5 in paragraph (b)(5)(v) of this section. If an exception from the second group of exceptions[2] to medical improvement applies, claimant's disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point

---

[1] The regulations state that "[t]he law provides for certain limited situations when your disability can be found to have ended even though medical improvement has not occurred, if you can engage in substantial gainful activity." These exceptions include: (i) substantial evidence shows that you are the beneficiary of advances in medical or vocational therapy or technology (related to your ability to work); (ii) substantial evidence shows that you have undergone vocational therapy (related to your ability to work); (iii) substantial evidence shows that based on new or improved diagnostic or evaluative techniques your impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision; or (iv) substantial evidence demonstrates that any prior disability decision was in error (a prior determination will be found in error only if substantial evidence shows on its face that the decision in question should not have been made).

[2] The second group of exceptions to medical improvement include: (i) a prior determination or decision was fraudulently obtained; (ii) you do not cooperate with us; (iii) we are unable to find you; and (iv) you fail to follow prescribed treatment that would be expected to restore your ability to engage in substantial gainful activity.

in this process.

Step 5. If medical improvement is shown to be related to claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, determine whether all current impairments in combination are severe. If the residual functional capacity assessment shows significant limitation of the claimant's ability to do basic work activities, see step 6. When the evidence shows that all the claimant's current impairments in combination do not significantly limit the physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, claimant will no longer be considered to be disabled.

Step 6. If claimant's impairment(s) is severe, assess the claimant's current ability to do substantial gainful activity in accordance with § 416.960. That is, assess the claimant's residual functional capacity based on all current impairments and consider whether he can perform prior work. If he can do such work, disability will be found to have ended.

Step 7. If the claimant cannot perform prior work, consider whether the claimant can do other work given the residual functional capacity assessment and age, education, and past work experience. If so, the disability has ended. If not, the disability continues.

The Commissioner bears the burden of proving that the claimant is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Greigo v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

Plaintiff was previously found to have met Listing 12.05, which governs "mental retardation." It "contains 'an introductory paragraph with the diagnostic description for mental retardation' and 'four sets of [severity] criteria (paragraphs A through D).'" *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)). Thus, the Listing separates the question of the impairment's existence from the question of its severity. *Randall*, 570 F.3d at 657. If the claimant's impairment satisfies the diagnostic description in the introductory paragraph (and the temporal requirement) and any one of the four severity criteria, the Commission will find that the impairment meets the listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A).

The diagnostic description in the introductory paragraph includes "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age

22." The required level of severity for this disorder is met when the requirements in criteria A, B, C, or D are satisfied. Those criteria are: (A) mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; (B) a valid verbal, performance, or full scale IQ of 59 or less; (C) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; (D) a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Plaintiff contends that he currently satisfies Listing 12.05C because there is evidence in the record of IQ scores between 60 and 70 and the ALJ found that he has other severe physical and mental impairments.

### III. Analysis

#### A. The ALJ's Decision

The ALJ found that "the most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated September 5, 2000," which was known as the "comparison point decision." Tr. 20. Further, the ALJ found that, at that time, Plaintiff was found to have the following medically determinable impairment – borderline intellectual functioning – and it was found to meet Listing 12.05. The ALJ further found that the medical evidence established that, as of June 30, 2009, Plaintiff had the following medically determinable impairments – low average to borderline intellectual functioning, dyslexia, depression, obstructive sleep apnea, and obesity – but that since June 30, 2009 he had not had an impairment or combination of impairments that meets or medically equaled a listed impairment.

The ALJ found that although the medical evidence revealed low IQ scores, it failed to document any deficits in adaptive behavior consistent with mental retardation and that Plaintiff's IQ scores are not consistent with his overall intelligence, which has been characterized as being in the borderline to low average range. Tr. 24. The ALJ also found that the medical evidence failed to indicate the profound mental incapacity described in criteria A, failed to show a valid verbal,

performance, or full scale IQ of 50 or less required by criteria B, failed to show a valid, verbal, performance, or full-scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function, as required by criteria C, and failed to show the requirements of criteria D. Thus, at Step 1, the ALJ found that Plaintiff did not meet the introductory criteria or the severity criteria of Listing 12.05 and that he therefore failed to meet or equal a listing impairment.

At Step 2, the ALJ found that the medical evidence supports a finding that, as of June 30, 2009, there had been a decrease in medical severity of the impairment present at the time of the September 2000 decision. Tr. 22. At Step 3, the ALJ found that the medical improvement was related to the ability to work because, as of June 30, 2009, the claimant's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. *Id.* The ALJ then appropriately proceeded to Step 5, and determined that Plaintiff has continued to have a severe impairment or combination of impairments. *Id.* At Steps 6 and 7, the ALJ found that, based on the current impairments, Plaintiff could not perform his prior work as a security guard but that he had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) involving simple, repetitive tasks. Tr. 26.

**B. Whether collateral estoppel applies?**

Plaintiff contends that collateral estoppel prevented the ALJ from reassessing whether Plaintiff meets the introductory criteria in Listing 12.05 and thus whether Plaintiff was mentally retarded, citing 20 C.F.R. § 404.950(f).[3] Plaintiff argues that the Commissioner previously found in 1995 and 2000 that Plaintiff's medically determinable impairment met Listing 12.05. Thus, Plaintiff notes, the Commissioner previously found that Plaintiff satisfied the introductory criteria to Listing 12.05 – significantly sub-average intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (*i.e.*, onset before age 22). Plaintiff

---

[3] (f) Collateral estoppel--issues previously decided. An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act or under the Federal Coal Mine Health and Safety Act. If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.

argues that he therefore established both low IQ scores (through valid testing)[4] and deficits in adaptive functioning with onset before the age of 22, and the ALJ's re-adjudication of these facts was improper. He contends that the ALJ's analysis should be limited to whether Plaintiff meets or equals the severity criteria of subsections (A) through (D) because these are "the parts which have some expectation of improvement." Pl. Opening Brief at 10.

The Magistrate Judge concluded that § 404.950(f) does not apply, given that it expressly applies only if a fact was previously decided "in a claim involving the same parties, but arising under a different title of the Act." The Court agrees. Moreover, as noted by the Magistrate Judge, the Social Security Administration is legally obligated to conduct a continuing disability review periodically to evaluate the continuing existence and/or severity of the impairment and determine whether the claimant is still eligible for SSI benefits. *See* 20 C.F.R. § 416.989; § 416.994 ("There is a statutory requirement that, if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically."). As part of this review, the Administration evaluates whether the impairment still exists or has improved medically. *See* 42 U.S.C. § 1382c (describing conditions under which a finding may be made that the physical or mental impairment on the basis of which SSI benefits are provided has ceased, does not exist, or is not disabling); 42 U.S.C. § 423(f) (describing standard of review for termination of disability benefits and stating conditions under which a finding may be made that an impairment on the basis of which benefits are provided has ceased, does not exist, or is not disabling). The ALJ may even apply a regulatory exception to medical improvement and cease benefits if substantial evidence demonstrates that the prior disability decision was made in error. 20 C.F.R. § 416.994(b)(3)(iv).[5] Thus, the ALJ is not

---

[4] The prior record for the 2000 CPD is not in the Court's file, but testimony from the hearing indicates that there was an IQ test dated August 9, 2000 that reflected IQ scores between 62 and 67. Tr. 327. Therefore, it appears that Plaintiff was previously determined to meet the criteria of Listing 12.05C (although there is no indication of an additional and significant physical or other mental impairment imposing a work-related limitation of function at that time) or 12.05D.

[5] A prior determination will be found in error only if: (A) substantial evidence shows on its face that the decision in question should not have been made; (B) required and material evidence of the severity of the impairment(s) was missing; or (C) new substantial evidence that relates to the prior determination of allowance or continuance refutes the conclusions that were based upon the prior evidence. 20 C.F.R. § 416.994(b)(3)(iv)(A)-(C).

precluded by collateral estoppel from determining that an impairment previously found no longer exists, though he may not simply substitute his judgment for that of the prior adjudicator.[6]

Further, decisions made in the CDR "will be made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that [the claimant has] previously been determined to be disabled." 20 C.F.R. § 416.994(b)(1)(vi); *see also* 42 U.S.C. § 1382c(4)(C) ("Any determination made under this paragraph shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled."). Thus, the ALJ considers whether the impairment that was present at the time of the most recent favorable medical decision continues to exist or has improved. However, the burden is on the Commissioner to establish that the impairment has ceased, does not exist, or is not disabling.

Plaintiff contends that the unique structure of Listing 12.05 precludes the ALJ from determining whether the introductory criteria were met in the CDR, and that he could determine only whether the severity criteria were met in the CDR because those are aspects of the disability that could be expected to improve. However, the fact that the Commission concluded in 2000 that Plaintiff had significant sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period does not require the ALJ to find that Plaintiff had significant sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period in 2009, just like a finding of finding of depression in 2000 would not require the ALJ to conclude that depression existed in 2009 and then be limited to determining its severity. The fact that Listing 12.05 has a unique structure that separates the introductory/diagnostic criteria and the severity criteria does not change this fact. As noted, the statute expressly contemplates that the impairment may have ceased to exist, and it is

---

[6] A substitution of current judgment for that used in the prior favorable decision will not be the basis for applying the error exception, and therefore the ALJ may not simply re-adjudicate the prior conclusion that the impairment equaled a Listing when symptoms, signs, and laboratory findings are unchanged. *Id.* 419.994(b)(3)(iv)(C); *see also Buckley v. Heckler*, 739 F.2d 1047 (5th Cir. 1984) ("The Secretary may not overrule an earlier finding of disability merely on a reappraisal of earlier evidence.").

possible that Plaintiff's general intellectual functioning and deficits in adaptive functioning could improve such that he would no longer satisfy the introductory criteria.

The ALJ found that Plaintiff had the impairment of "borderline intellectual functioning" at the time of the CPD in 2000, and "this impairment was found to meet section 12.05." Tr. 21. The ALJ found that Plaintiff had the impairment of "low average to borderline intellectual functioning" at the time of the CDR, and that it did not equal the severity of a listing impairment because the (A)-(D) severity criteria were not met.

Plaintiff takes issue with the ALJ's defining the impairment in 2000 as "borderline intellectual functioning" rather than "mental retardation." Citing the DSM-IV, Plaintiff asserts that borderline intellectual functioning is described as IQ scores ranging between 71 and 84, which are outside the range prescribed by Listing 12.05 (which refers to significant sub-average intellectual functioning, defined as an IQ of about 70 or below), and therefore Plaintiff could not have met the listing in 2000 if he was diagnosed with borderline intellectual functioning. Therefore, Plaintiff contends, he previously proved IQ scores of 70 or below with deficits in adaptive functioning and had mental retardation. Plaintiff argues that the ALJ and the Magistrate Judge improperly placed the burden on Plaintiff to re-establish IQ scores and deficits in adaptive functioning. Plaintiff argues that, in rejecting Plaintiff's collateral estoppel argument, the Magistrate Judge imposed the burden on Plaintiff to re-establish the existence of mental retardation, even though the Commissioner had previously found it existed, which runs counter to the burden of proof requiring the Commissioner to prove medical improvement and that the claimant is no longer disabled. Plaintiff argues that, in giving no significance to the prior decision and making Plaintiff establish mental retardation, there is no consistency in the decisionmaking and Plaintiff is subject to re-analysis by the ALJ, who may reject prior findings without due process. Plaintiff also contends that, in finding that the evidence only supported a diagnosis of borderline intellectual functioning, the ALJ implicitly found that the prior determination that Plaintiff was mentally retarded was made in error. Plaintiff asserts that the ALJ was re-evaluating whether Plaintiff was mentally retarded rather than applying the medical improvement standard.

The ALJ's finding that the prior impairment was "borderline intellectual functioning" rather than mental retardation is troubling. The Court notes that the file for the 2000 CDR was apparently

re-created, but it was not included in the record for the Court. Therefore, records used in establishing the prior finding of disability are not in the record here. However, it seems clear that Plaintiff was previously found to have at least mild mental retardation, not just borderline intellectual functioning. The ALJ did not purport to determine that the prior adjudication of mental retardation was in error. Rather, the ALJ clearly set forth that he was following the medical improvement standard of 20 C.F.R. § 416.994 as required. Nevertheless, the ALJ's characterization of the prior impairment as borderline intellectual functioning is harmless if substantial evidence supports his finding that the Listing is not currently met and that there was medical improvement, which were the bases for his decision. The Court will therefore evaluate whether substantial evidence supports the ALJ's findings that Listing 12.05 is no longer met and that medical improvement occurred, keeping in mind that the Commissioner bears the burden of demonstrating medical improvement. As part of the analysis, the Court will determine whether the ALJ properly based his decision on current evidence and did not improperly re-adjudicate the prior determination.

**C. Whether substantial evidence supports the ALJ's decision?**

As previously discussed, the first step of the standard permitted the ALJ to make the initial determination whether Plaintiff currently met a listing, and the ALJ found that he did not. The ALJ found that the medical evidence "fails to document any deficits in adaptive behavior consistent with mental retardation" and that the (A)-(D) severity criteria were not met. The ALJ also found that Plaintiff no longer met the listing due to medical improvement (which is presumed to be related to Plaintiff's ability to work).[7] As noted, medical improvement is any decrease in the medical severity of the impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or

---

[7] Plaintiff asserts that if he does not currently meet the same listing as in the prior determination, "medical improvement is presumed." Objections at 7 & n.38. This is incorrect. Rather, if the ALJ finds that the listing is no longer met and finds that there was medical improvement, it is presumed that the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 416.994(b)(2)(iv)(A) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.").

laboratory findings associated with the impairment. The Court reviews the ALJ's findings to determine whether they are supported by substantial evidence.[8]

The ALJ's conclusion that Plaintiff did not currently meet the Listing is supported by substantial evidence. The ALJ expressly noted that his conclusions were consistent with the findings and conclusions of Dr. Pelzer, the impartial medical expert, who reviewed the records and concluded that "the claimant's mental impairments neither meet nor medically equal any listed impairment, adding that the record also does not substantiate a diagnosis of mild mental retardation, particularly since the claimant's adaptive functioning suggests a higher level of intellectual functioning."[9]

Dr. Pelzer, the medical expert, testified to the following: Plaintiff was diagnosed with ADHD, combined type, and a provisional diagnosis of mild mental retardation in a clinical interview dated May 26, 2009, and cognitive functioning was within normal limits on the mental status exam, with the exception of not being able to interpret proverbs or do serial sevens; his adaptive functioning, work history, and ability to give a history suggests at least low average intellectual functioning; it was unclear from the clinical interview why he stopped working or whether he had any problems completing his tasks when he worked as a security guard or at McDonald's; he reported he did not pay attention and was distracted easily, but memory tasks, attention, and concentration were within normal limits on the mental status exam; his intellectual abilities had been in the mentally deficient range in a prior evaluation in 2000; his adaptive functioning was higher than expected when compared to the IQ scores; he was diagnosed based on prior documentation with

---

[8] Although the Commissioner must also establish that Plaintiff could engage in substantial gainful activity as of June 2009, Plaintiff does not challenge this finding, and the Court finds that this finding is supported by substantial evidence.

[9] It is true that the ALJ's discussion of this evidence is contained in his RFC analysis, which occurs at Step 6 rather than at Step 1 of the sequential analysis, but there is no indication that the ALJ improperly used the RFC analysis to reach his conclusion at Step 1. He notes that the limitations identified in the paragraph D criteria for Section 12.05 are not an RFC assessment but are used to rate the severity of mental impairments at prior steps of the sequential evaluation process. He expressly states that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the . . . paragraph "D" [criteria] for section 12.05 mental function analysis." Tr. 22. The ALJ therefore understood the distinction between determining the existence and severity of the impairment and the RFC analysis, and his failure to separately set forth his analysis and findings is not alone harmful error.

ADHD, mild mental retardation, and a reading disorder; information from the evaluation in August 2000 showed IQ scores and academic scores, but, by his scores, he does not qualify for the diagnosis of reading disorder; in a June 11, 2011 progress note he reported doing well, had been using his CPAP machine since February 2011, behavior was appropriate, he reported he was planning to take classes at San Antonio College (a junior college) in the fall; in September 2011 it was noted he seemed easily distracted but there was no mention of what distracted him and he was able to focus on one thing at a time, and he reported he planned to start college in the spring; he had a childhood history of ADHD but she did not see anything in the more recent record that he showed the typical behavior that a child shows for ADHD and she did not understand other than "some kids with dyslexia get put into the category of ADHD; the record does not fully substantiate the diagnosis of mild mental retardation, as his adaptive functioning suggests a higher level of functioning, at least borderline intellectual capacity and possibly low average; without school records, she did not know "for sure what happened, but . . . it's possible that he could have performed poorly on any written material because of the dyslexia"; he has weaknesses in academic function but that would not prevent him from leaning a simple job; his language skills and his ability to follow the conversation with the ALJ suggest a low average IQ with academic deficiencies; when asked about Dr. McCollum's report that states Plaintiff demonstrates adaptive behavior deficits consistent with mental retardation, she stated that his report contradicts itself because it says Plaintiff cannot read or write at functional levels but understands the storylines in books and TV programs and can use a telephone directory and make phone calls[10]; his impairment is at least borderline intellectual functioning and "it might be that it's at a higher level, but . . . it's at least borderline"; she considered prior evaluations and IQ scores but the DSM requires a valid IQ score and deficits in adaptive functioning and "that's the part that's missing"; he got a GAF of 80 in June 2001, which was "still a problem for me as far as he could have a learning problem that affects the IQ scores; there's no doubt about that" but mental retardation requires marked levels of dysfunction in adaptive behaviors and he is higher in that; "it is possible because of the dyslexia and whatever other problems he has in learning that that's why his scores on an IQ test are low [b]ut his adaptive functioning in higher

---

[10] The Court notes that there is also evidence in the record that Plaintiff wrote in a journal.

than what you would expect for a person with mental retardation"; "when his adaptive functioning is at the level it is, it means that he would be trainable, that he could do simple work if he was trained to do it."

Dr. Pelzer and the ALJ relied on Plaintiff's demonstrated adaptive functioning, work history from 2006 to 2009, communication skills, and medical records to conclude that Plaintiff's intellectual and adaptive functioning did not satisfy the criteria for mental retardation. The ALJ therefore considered new evidence and did not simply re-determine the 2000 finding of mental retardation. The evidence supports the ALJ's finding that Plaintiff lacks the necessary deficits in adaptive functioning for a diagnosis of mental retardation and that his intellectual functioning is appropriately characterized as borderline to low average intellectual functioning. Although Plaintiff points to other evidence that supports his position that he does have the necessary deficits in adaptive functioning and significantly sub-average intellectual functioning, this Court may not re-weigh the evidence and must uphold the ALJ's finding if it is supported by substantial evidence in the record.

The ALJ also found medical improvement. Although there is no evidence of a recent IQ test demonstrating improvement, IQ tests are not the only evidence that the ALJ can consider to find medical improvement. The ALJ noted that he could not resolve the issues "based on medical considerations alone" and that he had considered all of Plaintiff's symptoms. Tr. 22. The ALJ cited evidence demonstrating improvement in the signs and symptoms of Plaintiff's intellectual impairment. The ALJ noted that Plaintiff had worked in 2006 through 2009. The ALJ concluded that Plaintiff was terminated from his job as a security guard because his employer learned that he had cheated on the qualification examination. He noted that the evidence was insufficient to establish any disabling level of functional impairment during the relevant time, and that the psychiatric examination in September 2010 demonstrated clear speech; euthymic (normal) mood; appropriate appearance, behavior and affect; orientation in four spheres; fair insight, judgment, and reliability. He also noted that Plaintiff reported doing well with no medical concerns or problems in June 2011 and noted that he planned to start college courses at San Antonio College. The ALJ noted that, at the clinical interview in May 2009, a mental status examination "showed the claimant's cognitive functioning to be within normal limits, except for his inability to interpret proverbs or perform serial-seven calculations." There is substantial evidence to support the ALJ's finding of

medical improvement.

## Conclusion

The Court's review indicates that the ALJ applied the correct legal standards and that his findings are supported by substantial evidence. Accordingly, the Court accepts the Magistrate Judge's recommendation and AFFIRMS the Commissioner's decision denying benefits.

It is so ORDERED.

SIGNED this 6th day of December, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE